McCARTHY et al. v. CENTRAL DREDGING CO.

(District Court, W. D. New York. November 2, 1911.)

SHIPPING (§ 76*)—CONTRACTS—ACTION FOR BREACH—EVIDENCE OF TERMS.

Evidence considered, and *held* to sustain the allegations of libelants that they were employed by respondent as professional divers at a per diem compensation, to render services in examining and repairing a sunken scow, to put her in a condition to be raised, and not to sustain the contention of respondent that they performed the work in such negligent manner as to defeat their right to recover therefor and render them liable in damages.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 76.*]

In Admiralty. Suit by Jeremiah J. McCarthy and James J. McCarthy against the Central Dredging Company. Decree for libelants.

Libel in personam to recover $341, for work and labor performed in raising sunken boat owned by the respondent corporation.

Brown, Ely & Richards, for libelants.
Calfee & Fogg, for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

HAZEL, District Judge. The libelants, who are partners, claim that at the request of the Central Dredging Company they rendered services, for a period of nine days at the agreed sum of $35 per diem, consisting of diving and searching for leaks in a mud scow which was sunk in Buffalo river, repairing her, and furnishing a quantity of cloth used in the performance of the work. The answer admits the employment, but alleges that after making the inspection of the scow on the bottom of the river the libelants represented that they could repair her so that she could be floated, by pumping the water out of her air chambers, and it is further alleged that, after working some time on the scow and repairing her deck at one end, the libelants' diver untruthfully reported to the respondent that the scow had been properly repaired.

The particular claim is that the work of inspection and repairing was so carelessly done that libelants' diver left uncovered a hole in the deck at one end of the scow, about 12 inches wide and 44 inches long, through which the water flowed more rapidly than it could be pumped out; that, after failing to raise the scow, the respondent was compelled to adopt a different method of raising her, a method involving the use of jack screws, at an expense of $2,188.66, for which amount judgment is demanded against the libelants in the cross-libel. The respondent broadly contends that one who holds himself out as qualified and competent to perform work is liable for special damages sustained if he fails to exercise proper care and skill in the performance of the work for which he was engaged. The rule of damages invoked by the respondent is not applicable to the case. It certainly was not contemplated by the parties that libelants, for their failure as divers to raise the scow, should be held responsible for the entire cost of raising her by a different method. But the question of damage on the cross-bill, in view of the proofs, does not arise and need not be further discussed. Libelants have shown that their relations with the respondent were simply contractual by which, for the hire of their services as professional divers, they were to receive a per diem compensation, the work to be continued from day to day, at the option of the respondent.

Much testimony was given on both sides in support of the respective contentions; but, in the view I take of the proof, the case is not to be decided upon the question of the asserted negligence of the diver and his failure to skillfully perform the work of repairing the scow. The elicited facts show that Mahar (the diver) at the request of the respondent, and prior to the arrangement for repairing the scow, released her pockets and straightened a cable under her bottom preparatory to raising her. She was resting in 22 feet of water, and efforts to raise her by means of the cable were futile. Afterwards the libelants and the agents of the respondent discussed the feasibility of floating the scow by pumping her out or raising her by jack screws. Mr. McCarthy swore that he advised, at the outset, that the best method would be to use jack screws, as to raise her by pumping was too uncertain; but the respondent's superintendent expressed the opinion that the scow could be repaired and raised by pumping out the water, and the agreement to make repairs was then entered into. After repairing

the deck at one end of the scow, a 6-inch pump was used and abandoned and a 12-inch pump substituted, which, however, also failed to pump out the water. The diver again made an examination, to ascertain if possible what prevented the scow from floating, and discovered a hole in the forward deck. In repairing such hole he used a board which he fastened over the opening, and, on coming to the surface, informed the respondent's superintendent of what he had done, and the large pump was again used for a period of 15 or 20 minutes longer, but, as the scow did not come to the surface, the pumping operation was discontinued and the diver dismissed.

The evidence does not conclusively show that the scow could have been raised by pumping her out even though she had been freed of water. The several pockets in the scow were fully loaded with mud, and I think it was merely conjecturable as to whether she would float after the water had been pumped from her air spaces. Nor do I regard it proven that the diver was negligent in repairing the forward end of the scow, or that owing to his want of care and skill the repairs were improperly done. The fact that after the scow was raised it was discovered that the forward hole or break had not been securely repaired or sufficiently covered is not enough, in my opinion, in view of the circumstances, to justify me in holding that the repair work was negligently performed. The deck was covered with mud, and it required a painstaking endeavor to shovel it off to enable the diver to properly fit and nail the board to the deck. Considering the peculiar nature of the work, his failure to completely cover the opening at this time was not such an act of negligence, or failure to exercise the skill of his calling, as to render the libelants liable in damages to the respondent. This view finds support in the testimony of witnesses Smith and Baker, who testified that it is frequently necessary for a diver to examine and re-examine a sunken boat before there is certainty of the completeness of any repairs which may be required in efforts to float her.

In my judgment the libelants by a preponderance of the evidence have established the allegations of the libel. They are entitled to recover the amount claimed to be due, with interest, and to a dismissal of the cross-libel, with costs.